**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

────────────────────────────────

**Rommie Telfair,**

                    **Plaintiff,**              **04 Civ. 2122 (JGK)**

          **- against -**                    **OPINION AND ORDER**

**Michael J. Astrue,**
**Commissioner of Social Security**

                    **Defendant.**

────────────────────────────────

        The plaintiff, Rommie Telfair, was determined by the
Commissioner of Social Security ("Commissioner") to be
disabled and eligible to receive disability insurance
benefits ("DIB") as of March 1, 1994.  The plaintiff brings
this action pursuant to 42 U.S.C. § 405(g) seeking the
reversal of a final determination of the Commissioner that
the plaintiff is not entitled to DIB for the period from
March 20, 1993,[1] through February 28, 1994.  See 42 U.S.C. §
423(d)(1)(A) (defining disability as an "inability to
engage in any substantial gainful activity by reason of any
medically determinable physical or mental impairment which
can be expected to result in death or which has lasted or
can be expected to last for a continuous period of not less

────────────────────────

[1] There is some ambiguity in the plaintiff's filings as to whether the
plaintiff claims his disability began on March 10, 1993, or March 20,
1993.  The plaintiff's original application for DIB lists the
disability onset date as March 10, 1993, see R. at 119, but later
submissions to the Court, as well as one of the legal theories of the
plaintiff's claims, argue for an onset date of March 20, 1993.  The
plaintiff clarified at oral argument that the onset date he is seeking
is March 20, 1993.

than 12 months"). The Commissioner has moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) to affirm the Commissioner's determination that the onset date of the plaintiff's disability is March 1, 1994. In response, the plaintiff has submitted a cross-motion for judgment on the pleadings, which requests this Court to determine that the appropriate disability onset date is March 20, 1993, with a remand to the Commissioner solely for the calculation and payment of benefits. In the alternative, the plaintiff requests that the Court remand the case to the Commissioner for administrative proceedings to establish the plaintiff's disability onset date.

The issues presented by these motions are whether the Commissioner's determination that the plaintiff's disability began on March 1, 1994, rather than March 20, 1994, was based on legal error and whether the Commissioner's determination is supported by substantial evidence in the record. See 42 U.S.C. § 405(g); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); Garvin v. Barnhart, 254 F. Supp. 2d 404, 409 (S.D.N.Y. 2003).

**I.**

**A.**

The plaintiff originally applied for DIB and Supplemental Security Income ("SSI") benefits on March 9,

1994, claiming that he had been disabled since March 10, 1993. R. at 119-24. On the original application for disability benefits, the plaintiff listed back problems and severe headaches as the disabling condition entitling him to benefits. R. at 119. On June 28, 1994, the Commissioner found the plaintiff to have been disabled as of March 1, 1994. R. at 40-41. Although the plaintiff did not appeal that determination, on November 13, 1996, he did request that the June 28, 1994, decision be reopened or that he be granted an extension of time to appeal that decision. R. at 375-77. In March 1997, the Commissioner issued another finding that the plaintiff's disability began on March 1, 1994. R. at 69-70. The plaintiff requested reconsideration and, on July 1, 1998, the Commissioner issued a Notice of Reconsideration upholding the previous determination of the onset date. R. at 85-87. The plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which was held before ALJ Kenneth Scheer on February 25, 2000. See R. at 94, 420-43. On May 22, 2000, the ALJ found that the plaintiff had not met his burden of establishing the existence of a severe impairment for the period from March 10, 1993, to February 28, 1994. R. at 18-25. The plaintiff requested that the Appeals Council review the ALJ's decision on July 25, 2000.

3

R. at 6-9.  The Appeals Council denied the plaintiff's
request for review on January 13, 2004, making the ALJ's
determination of the onset date the Commissioner's final
decision.  R. at 3-5.

### B.

The following facts appear in the administrative
record.  The plaintiff was born on April 4, 1943.  R. at
26.  He has approximately an eighth grade education.  R. at
432-33.  Immediately prior to his disability, he worked as
a maintenance worker.  R. at 123.  According to an undated
vocational report, this job did not require any lifting,
but it did require long periods of standing, walking, and
constant bending.  R. at 128.  Before working as a
maintenance worker, the plaintiff worked as a painter.  R.
at 127.

On January 25, 1993, the plaintiff was examined at
Peninsula Hospital complaining that he had been hit by a
car.  The hospital found no evidence of fracture or
dislocation, and he was discharged in satisfactory
condition.  R. at 152-54.

On March 20, 1993, the plaintiff was treated at
Peninsula Hospital for injuries sustained when he was
assaulted in his home.  R. at 155-59, 166-68.  His
assailants stabbed him in the right leg with a knife and

repeatedly struck him in the head.  R. at 156, 167.
Although he was treated at Peninsula Hospital and released
in satisfactory condition on March 20, 1993, R. at 156, he
has not worked since the assault.  R. at 119.

Additional medical records in the administrative
record indicate that, during the period at issue, the
plaintiff received treatment for various conditions
unrelated to the March 20 assault.  On June 14, 1993, the
plaintiff went to the Peninsula Hospital emergency
department after stepping on glass.  R. at 161-62.  He was
treated at the same hospital in December 1993 for burns on
his left hand and arm.  R. at 169-170.

About six months following the assault, in September
1993, the plaintiff lost his home due to foreclosure and
became a resident of the Bellevue Men's Shelter.  See R. at
368, 433.  While a resident there, he was treated at the
Bellevue Medical Department ("Bellevue") for various
medical conditions.  His medical history was recorded at
Bellevue on January 10, 1994, and it indicated that he had
not seen a doctor in the previous month, had not had an
operation or been otherwise hospitalized recently, had not
been injured recently, and was not taking any medications.
R. at 193.  He also stated that he had never been treated
or hospitalized for mental problems.  R. at 192.  On

5

January 14, 1994, the plaintiff was treated at Bellevue after complaining about difficulty with long distance vision and reading, which resulted in a diagnosis of presbyopia and a prescription for reading glasses.  R. at 189.  On January 24, 1994, the plaintiff was again treated at Bellevue, complaining of being nervous for the past few weeks and under a lot of stress.  R. at 188.  Although the January 24 medical report indicates that the plaintiff had a non-significant medical and psychiatric history, he was referred to the psychiatric clinic at that time.  R. at 188.  During February 1994, the plaintiff was treated at Bellevue for complaints of back pain and a cough.  R. at 178, 186-87.  On the plaintiff's original application for disability benefits, he indicates that he was treated for psychiatric reasons at Bellevue Hospital in March 1993, but the medical records provided by Bellevue do not indicate such psychiatric treatment.  R. at 121.

Following the period at issue, the plaintiff continued to receive various medical treatments at Bellevue that are unrelated to his claim for disability benefits.  <u>See</u> R. at 177, 210-11, 233-45, 332, 334-37.  Related to this appeal, in May 1994, the plaintiff received consultative physical and psychiatric examinations as part of his application for disability benefits.  R. at 203-208.  At that time, he was

diagnosed with a low back disorder, organic mental syndrome with depression, and "status post head injury." R. at 205, 208. Dr. Algaze, the psychiatrist who conducted the consultative examination, noted that the plaintiff complained that after he was mugged and hit on the head, the plaintiff experienced difficulties with his remote memory and his attention and concentration span. Dr. Algaze stated that the plaintiff's allegations were "consistent with my findings" and gave the plaintiff a "guarded" prognosis. R. at 208. On June 26, 1994, a medical consultant reviewed the medical evidence pertaining to the plaintiff's claim for disability and gave an opinion that the evidence supported a disability onset date of March 1, 1994, but not March 1993. R. at 42-45. There is no explanation of the reason for this conclusion.

The plaintiff began receiving mental health treatment in February 1996, when he was examined at the State University of New York Postgraduate Center for Adult Services ("SUNY"). See R. at 218. His treatment at SUNY continued through October 1998. See R. at 297. In an examination at SUNY in March 1996, he described feelings of depression for the previous two years, having briefly lost his memory after the assault in March 1993, and having lost his home due to foreclosure. R. at 224. As a result of

this examination, he was diagnosed with dysthymia.  R. at 224.  A psychiatric examination on July 10, 1996, resulted in a diagnosis of post traumatic stress disorder and major depression with psychosis.  R. at 293.  The report also notes "Head Trauma 1993.  Headaches."  Id.

On the basis of the medical evidence in the record, the Administrative Law Judge found that the plaintiff did not have a severe impairment during the period from March 10, 1993, to February 28, 1994, see 20 C.F.R. §§404.1520(c), 404.1521, and therefore did not meet the statutory definition of disabled during the period at issue.  R. at 21-25.  To determine if the plaintiff was disabled during the period from March 10, 1993, to March 20, 1994, the ALJ applied the five-step process that the Commissioner uses to determine whether a Social Security claimant is disabled.  See R. at 23-24; see also Shaw v. Chater, 221 F.3d 126, 132 (2d Cir. 2000) (describing five-step process used to determine disability under Social Security Act); 20 C.F.R. § 404.1520.  At step one of that process, the ALJ found that the record evidence and the plaintiff's testimony demonstrated that the plaintiff had not engaged in substantial gainful activity, as defined in the Social Security Regulations, at all relevant times.  R. at 24; see 20 C.F.R. § 404.1571.

At step two of the five-step process, the ALJ found
that the plaintiff did not have any mental or physical
impairments that, singly or in combination, were considered
to be "severe" within the meaning of the Social Security
Act and Regulations.  R. at 24; see 20 C.F.R. §§
404.1520(c); 404.1521.  The ALJ reasoned that, after the
March 20, 1993, assault, the plaintiff was treated at and
released from the emergency room at Peninsula Hospital in
satisfactory condition, diagnosed only with a stab wound
and a hematoma on his head.  Furthermore, the ALJ noted,
the plaintiff "did not seek any treatment prior to March 1,
1994," and medical records from Bellevue indicated that the
plaintiff had never been treated or hospitalized for mental
health problems, that he had not seen a doctor in the last
thirty days, and that he was not taking any medicine.  R.
at 24.  The ALJ noted that the plaintiff did not receive
psychiatric treatment until his visit to SUNY in 1996, when
he was diagnosed with dysthymia and post traumatic stress
disorder.  The ALJ thus concluded that "there are no
medical records during the period of review that establish
the existence of a 'severe' impairment," R. at 24, and
accordingly found that the plaintiff had not been under a
disability during the period from March 10, 1993, to March
20, 1994.

## II.

### A.

A court may set aside a determination by the Commissioner only if it is based on legal error or it is not supported by substantial evidence in the record.  See 42 U.S.C. § 405(g); Berry, 675 F.2d at 467.  The review of the Commissioner's decision is not conducted de novo, see Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998), and the Commissioner's decisions that are supported by substantial evidence should be upheld even if the reviewing court's independent analysis might have come out differently than the Commissioner's.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

The plaintiff asserts both that the ALJ applied the wrong legal standard to determine his disability onset date and that the date determined is not supported by substantial evidence in the record.  The Commissioner asserts that the evidence in the record supports an onset date of March 1, 1994, and that the ALJ did not commit legal error in arriving at that date.

### B.

The plaintiff argues that the ALJ committed legal error by not following the procedure set forth in Social Security Ruling 83-20, which governs the determination of

disability onset dates, see SSR 83-20, Titles II and XVI:
Onset of Disability, 1983-1991 Soc. Sec. Rep. Serv. 49
(S.S.A.) ("SSR 83-20"), and is binding on the Commissioner.
See Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984)
(noting that, although Social Security Rulings do not have
the force of law, they are binding on "all components of
the Social Security Administration"); Martinez v. Barnhart,
262 F. Supp. 2d 40, 45 (W.D.N.Y. 2003) (SSR 83-20 is
binding on the Commissioner).  Although the ALJ is not
required to cite the Ruling by name, he was required to
follow its procedures to determine the onset date of the
plaintiff's disability.  See McClanahan v. Comm'r of Soc.
Sec., 474 F.3d 830, 834 (6th Cir. 2006); Pugh v. Bowen, 870
F.2d 1271, 1274 (7th Cir. 1989).

Ruling 83-20 distinguishes between disabilities of
traumatic origin and those of non-traumatic origin.  For
disabilities of a traumatic origin, the Ruling states that
"onset is the day of the injury if the individual is
thereafter expected to die as a result or is expected to be
unable to engage in substantial gainful activity . . . for
a continuous period of at least 12 months."  SSR 83-20.

Determination of an onset date for disabilities of
non-traumatic origin is more complicated.  The Ruling
states that, for non-traumatic disabilities, "the

determination of onset involves consideration of the
applicant's allegations, work history, if any, and the
medical and other evidence concerning impairment severity.
The weight to be given any of the relevant evidence depends
on the individual case."  Id.

The ALJ did not make a finding as to whether the
plaintiff's disability which was found to exist at least by
March 1, 1994, was of traumatic origin or of non-traumatic
origin.  If the disability was of traumatic origin, in
particular if it was caused by the assault and beating on
March 20, 1993, the ALJ would have been required to address
whether the plaintiff was expected to be unable to engage
in substantial gainful activity on that date.  The ALJ did
not make such a finding.

In any event, in this action the Commissioner argues
that the disability was of non-traumatic origin, that it
developed over time, and that there may have been various
causes such as the assault and the subsequent loss of the
plaintiff's home and consequent homelessness that produced
the plaintiff's organic brain syndrome and depression.

For injuries of non-traumatic origin, SSR 83-20
requires that the ALJ consider three elements:  "the
applicant's allegations, work history, if any, and the
medical and other evidence concerning impairment severity."

SSR 83-20.  The Ruling goes on to state that "the date
alleged by the individual should be used if it is
consistent with all the evidence available. . . . However,
the established onset date must be fixed based on the facts
and can never be inconsistent with the medical evidence of
record."  Id.

In this case, the first two of these three elements
support the plaintiff's contention of an onset date in
March 1993.  His work history indicates that he stopped
work around the time of the assault after a long history of
employment.  Additionally, the fact that he lost his home
due to foreclosure, became homeless, and reported to a
homeless shelter indicate that a once stable life became
very unstable in the months following his assault.  His
allegations of a disabling condition resulting from the
March 1993 assault are consistent with this evidence in the
record.

With respect to the third element in non-traumatic
disabilities, medical evidence, SSR 83-20 further notes
that:

> With slowly progressive impairments, it is sometimes
> impossible to obtain medical evidence establishing the
> precise date an impairment became disabling.
> Determining the proper onset date is particularly
> difficult, when for example, the alleged onset and the
> date last worked are far in the past and adequate
> medical records are not available.  In such cases, it

> will be necessary to infer the onset date from the
> medical and other evidence that describe the history
> and symptomatology of the disease process.

Id.  SSR 83-20 thus permits a disability onset date to be

determined from reasonable inferences based on the

available medical evidence, which requires making "an

informed judgment of the facts in the particular case"

based on "a legitimate medical basis."  Id.  If such an

inference is required, Ruling 83-20 states that "[a]t the

hearing, the [ALJ] should call on the services of a medical

advisor" and should secure any medical evidence concerning

onset that the record indicates is available.  Id.

(emphasis added).  Finally, other sources of documentation,

such as information from "family members, friends, and

former employers" can be consulted if a reasonable

inference cannot be made on the basis of record evidence or

additional medical evidence.  Id.  After reviewing the

medical evidence and obtaining any additional evidence that

might be required, "[t]he onset date should be set on the

date when it is most reasonable to conclude from the

evidence that the impairment was sufficiently severe to

prevent the individual from engaging in [substantial

gainful activity] (or gainful activity) . . . for a

continuous period of at least 12 months or result in death.

14

Convincing rationale must be given for the date selected."
Id. (emphasis added).

The plaintiff argues that an inference regarding the
correct onset date was required in this case because the
medical evidence in the file was inadequate to establish a
precise onset date and that the ALJ therefore should have
consulted a medical advisor or obtained other evidence.
The Commissioner, in turn, contends that the procedures of
Ruling 83-20 were followed and that the record contained
adequate medical evidence to make a determination of the
plaintiff's disability onset date.

Although there is no controlling Second Circuit
precedent on this issue, case law applying Ruling 83-20 in
other circuits indicates that an ALJ should consult a
medical advisor at the hearing when the medical evidence in
the record is ambiguous. See, e.g., Karlix v. Barnhart,
457 F.3d 742, 747 (8th Cir. 2006) ("If the medical evidence
regarding onset is ambiguous, however, the ALJ should
obtain an expert opinion from a medical advisor to
determine a medically reasonable date of onset."); Bailey
v. Chater, 68 F.3d 75, 79 (4th Cir. 1995) ("[I]f the
evidence of onset is ambiguous, the ALJ must procure the
assistance of a medical advisor in order to render the
informed judgment that the Ruling requires."); Spellman v.

Shalala, 1 F.3d 357, 362 (5th Cir. 1993) ("[I]n cases involving slowly progressing impairments, when the medical evidence regarding the onset date is ambiguous and the Secretary must infer the onset date, 83-20 requires that that inference be based on an informed judgment.  The Secretary cannot make such an inference without the assistance of a medical advisor."); DeLorme v. Sullivan, 924 F.2d 841, 848 (9th Cir. 1991) ("In the event that the medical evidence is not definite concerning the onset date and medical inferences need to be made, SSR 83-20 requires the administrative law judge to call upon the services of a medical advisor . . . ."); see also Walton v. Halter, 243 F.3d 703, 709-10 (3d Cir. 2001) (collecting cases).[2]  The question presented by the plaintiff's claim, then, is whether the medical evidence in the record regarding his disability onset date was ambiguous.

---

[2] The Court of Appeals for the Seventh Circuit has expressed the rule slightly differently.  See Pugh, 870 F.2d at 1278 & n.9 (finding that ALJ can choose appropriate onset date of disability without aid of medical advisor when there is "a relatively complete medical chronology"); see also Spellman, 1 F.3d at 362 n.8 (discussing Pugh). Pugh, however, stands only for the proposition that when the medical evidence is relatively clear, no medical advisor is required.  Accord Spellman, 1 F.3d at 362 n.8 (finding Pugh inapplicable to case where medical chronology is incomplete).  To the extent that these standards are different, this case is more similar to the Seventh Circuit's decision in Lichter v. Bowen, 814 F.2d 430 (7th Cir. 1987), where the Court of Appeals remanded for a redetermination under 83-20 when the ALJ's determination appeared to be based on a lack of contemporaneous medical evidence.  See id. at 435; see also Pugh, 870 F.2d at 1289.

A review of the administrative record demonstrates
that the evidence regarding the plaintiff's disability
onset date was at least ambiguous, and certainly not
supportive of an onset date of March 1, 1994, because it is
unclear when the plaintiff's organic brain syndrome and
depression became disabling.  While the plaintiff sought
treatment for various medical conditions throughout the
period in question, none of the physicians treating him
were looking for psychiatric problems.  This case is thus
different from cases involving alleged ambiguity regarding
the disability onset date where the claimant was examined
for the specific medical problems alleged to be disabling
during the period in question or where the medical record
is well-developed, see, e.g., McClanahan, 474 F.3d at 839;
Pugh, 870 F.2d at 1276, and the lack of psychiatric
evidence prior to March 1994 therefore is not
determinative.  See Spellman, 1 F.3d at 363 (finding that
"lack of evidence alone is not sufficient to support a
finding that an impairment did not exist at a disabling
level of severity").

A consultative psychiatric evaluation by Dr. Algaze in
May 1994 concluded that the plaintiff's allegations "are
consistent with my findings." R. at 208.  On the other
hand, on June 26, 1994, a medical consultant reported that

there was "no evidence in [the] file to support" an onset date of March 10, 1993, but that "onset supported is 3/94." R. at 45.  At the very least, these two inconsistent conclusions created ambiguity with respect to the plaintiff's disability onset date.  Importantly, the medical consultant's brief statement, based only on a review of the evidence in the file at that time, does not provide any reasoning for why the earlier onset date was not supported or why March 1994 was chosen as the appropriate date.  Indeed, it is unclear if the medical consultant was attempting to provide an opinion as to the onset date or simply attempting to assess whether there was other evidence in the file as to the appropriate onset date.  Dr. Algaze's report, in contrast, indicates his finding that the plaintiff's medical conditions are consistent with the plaintiff's allegations.  Further, the subsequent medical history in the record is focused on providing treatment to the plaintiff and not determining when he became disabled.  It therefore does nothing to dispel the ambiguity created by Dr. Algaze's report and the medical consultant's cursory statement.

Because the onset date needed to be inferred and the medical evidence was unclear, it was improper for the ALJ to conclude that "the claimant has not met his burden of

proof to demonstrate that he has a 'severe' impairment or combination of impairments within the meaning of the Social Security Act and Regulations." R. at 24.  While it is true that Social Security claimants retain the burden of proof during the first four steps of the five-step process, the ALJ had a specific duty under Ruling 83-20, when confronted with an ambiguous medical record, to develop the medical record by calling a medical advisor to testify at the hearing.  See Spellman, 1 F.3d at 363 n.9 ("SSR 83-20 places the burden of consulting a medical advisor on the Secretary, not the claimant.").  Only in doing so would he have been able to make a proper, medically-based inference regarding the plaintiff's disability onset date.

### C.

In addition to failing to call a medical advisor for assistance in identifying a medically reasonable disability onset date for the plaintiff, the Commissioner committed a second legal error under SSR 83-20.  SSR 83-20 requires that a "[c]onvincing rationale must be given for the date selected."  The record in this case contains a complete lack of any explanation for why an onset date of March 1, 1994, was chosen.  The medical consultant's brief statement that "onset supported is 3/94," R. at 45, points to no evidence to support that date.  Moreover, the ALJ provided

no basis for choosing March 1, 1994, as the disability
onset date, much less a "convincing rationale."  On remand,
the Commissioner should provide a rational explanation for
why a particular disability onset date for the plaintiff is
chosen.  Accord Bailey, 68 F.3d at 80 (finding
Commissioner's choice of onset date without consulting
medical advisor to be arbitrary).

Because the Commissioner committed legal error in
failing to follow the procedures required of the ALJ by SSR
83-20, it is unnecessary to consider the plaintiff's
additional claim that the Commissioner's determination was
not based on substantial evidence, and the case is remanded
to the Commissioner for further proceedings.  To determine
a medically-reasonable disability onset date for the
plaintiff, the ALJ on remand should call on the services of
a medical advisor and follow the additional procedures
outlined in that ruling.  A convincing rationale should be
given for the disability onset date that is chosen.

## CONCLUSION

For the reasons explained above, the Commissioner's
motion for judgment on the pleadings is denied.  The
plaintiff's cross-motion for judgment on the pleadings is
granted in part, and the case is remanded to the

Commissioner for additional administrative proceedings

consistent with this Opinion and Order.


SO ORDERED

Dated:      New York, New York
            May 14    , 2007

                                        John G. Koeltl
                                United States District Judge

21